Case 04-34122-sgj13 Doc 41 Filed 09/06/06 Entered 09/06/06 10:18:19 Page 1 of 11

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 5, 2006**            **United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD STEPHEN GOLD, JR., | § | CASE NO. 04-34122-SGJ-13 |
|     DEBTOR. | § | |

### MEMORANDUM OPINION IN SUPPORT OF ORDER DENYING BOTH MOTION TO DISMISS CHAPTER 13 CASE AND MOTION TO VACATE/RECONSIDER ORDER OF DISCHARGE, WITHOUT PREJUDICE TO THE FILING OF AN APPROPRIATE ADVERSARY PROCEEDING

CAME ON FOR CONSIDERATION by this court the Motion to Dismiss Chapter 13 Case [Docket Entry #19] and the related Motion to Vacate/Reconsider Order of Discharge [Docket Entry # 20] filed by Ryan and Quinn Gold. The court held a hearing on June 12, 2006, and requested certain supplemental briefing which was later provided by counsel (with the last briefing submitted July 5, 2006). This memorandum opinion encompasses the court's findings of facts and conclusions of law pursuant to Federal Rules of

Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact shall be construed as a conclusion of law and vice versa. The court reserves the right to make further findings of fact and conclusions of law, as it determines necessary.

## JURISDICTIONAL STATEMENT

Although a bankruptcy court typically has jurisdiction to consider a motion to dismiss or a motion to vacate/reconsider an order of discharge, pursuant to 28 U.S.C. § 1334(b) and § 157(b)(2)(A), (J) and (O), this court believes it must decline to exercise jurisdiction in this matter at this juncture, because the issues presented in the motions require an adversary proceeding for resolution.

## FACTS

1. Richard Stephen Gold, Jr. ("Mr. Gold" or the "Debtor") has filed two bankruptcy cases: (a) a Chapter 7 case, Case No. 03-82766-HDH-7, filed on December 11, 2003 (the "Chapter 7 Case") in which he received a discharge on April 6, 2004, and (b) a Chapter 13 case filed on April 7, 2004 (the "Chapter 13 Case"), in which a plan was subsequently confirmed and completed, and in which the Debtor received a discharge pursuant to an Order Discharging Debtor After Completion of Chapter 13 Plan entered April 4, 2006.

2. Mr. Gold is the father of Ryan and Quinn Gold, both of whom are now adults. Ryan and Quinn Gold each hold a judgment against Mr. Gold dating back to 1995 arising from allegations of child sexual abuse. Specifically, on July 12, 1995, the Circuit Court of Cook County, Illinois, Judge Edward R. Burr ("Illinois Court"), in Cause No. 92L-15751, entered a judgement in favor of Ryan Gold in the amount of $2,500,000, and a separate judgment in favor of Karen Killoren as mother and next friend of Quinn Gold[1] in the amount of $7,500,000 (collectively, the "Foreign Judgments"), after a trial by jury of twelve, in which the jury found Mr. Gold liable for committing conduct against Ryan and Quinn that was "willful, intentional and malicious." Movants' Exhibits 1 and 2.

3. Mr. Gold testified that he had not had any contact with his children since 1984 or 1985. He has had no personal relationship with them and testified he has not been aware where they were living since some time in the 1980's.

4. Mr. Gold has been involved in litigation with the children's mother fairly recently in Dallas state court proceedings (litigation that has gone on for many years) relating

---

[1] Quinn Gold was a minor (age 16) at the time of the Illinois Court action and at the time the judgments were rendered.

3

to their divorce and related matters.

5. Ryan and Quinn Gold allege that they were not afforded any written notice and had no actual knowledge of either of the Debtor's bankruptcy cases. The evidence is that Mr. Gold did attempt to provide some written notice of his Chapter 7 Case to Ryan and Quinn Gold. Specifically, Mr. Gold served notice of the Chapter 7 Case on three attorneys who had represented Ryan Gold, Quinn Gold, and/or Karen Killoren (mother of Ryan and Quinn Gold) in different capacities. Those attorneys were: (a) Charles P. Carroll at a law firm called Morrison, Carroll & McGrath in Northbrook, Illinois, who was the attorney who represented Ryan Gold and Karen Killoren, as mother and next friend of Quinn Gold, in the Illinois Court; (b) Brittan L. Buchanon at Hughes Luce, LLP in Austin, Texas, an attorney whose representation of Ryan and Quinn Gold's interests is not clear from the record in this matter—there was evidence that Ryan and Quinn Gold had made no efforts ever to pursue post-judgment collection efforts in Texas on the Foreign Judgment and that Mr. Buchanon had not represented them in that capacity, but there was never an outright denial by Ryan Gold that this attorney had represented him in some capacity; and (c) Allen Wittenberg at Wittenberg & Assoc., PLLC in Dallas, Texas, who is an attorney who appears to have

represented Karen Killoren, the mother, in matters unrelated to the Illinois Court actions or the Foreign Judgements. None of the bankruptcy notices were returned as undeliverable. Mr. Gold also scheduled (in his Schedule F) the claims of Ryan and Quinn Gold and their mother, Karen Killoren (again, listing in his Schedule F for their addresses, the three attorneys listed above).

6. Ryan and Quinn Gold unequivocally testified that they had not had any contact with Charles P. Carroll since shortly after the Foreign Judgments were rendered in 1995. Quinn Gold testified that she had occasional contact with a cousin on her father's side of the family (Anthony Lynch) with regard to whom Mr. Gold also testified he was in occasional communication. Quinn Gold also testified that she had testified in her parents' divorce hearings in state court in 2001 or 2002, at which her father's attorney asked for her address and she would not give it to him, but she did tell him the college she was attending. Ryan and Quinn Gold testified that they remain in contact with their mother and they did not know if their mother knew about the bankruptcy cases.

7. Mr. Gold did not provide Ryan and Quinn Gold (or their mother) with any notice of the Chapter 13 Case because he/his

attorney believed that their claims were discharged in the Chapter 7 Case since he gave notice to the three attorneys.

8.  However, Ryan and Quinn argue that the written notice given to them in the Chapter 7 Case did not meet minimal Constitutional requirements of due process—*i.e.,* that is, it was not reasonably calculated to give them notice of the case. They argue that the attorney(s) allegedly served on their behalves were former attorneys (or, in the case of Quinn, the former attorney of her next friend and mother), and Ryan and Quinn allege that they do not even know where Mr. Carroll, who represented their interests in the Illinois Court, is anymore. Ryan and Quinn allege that they did not ever receive notice of the bankruptcy through these former attorneys. They argue that they had no actual knowledge of the Chapter 7 Case (or the Chapter 13 Case) until February 2005 (during some unrelated family mediation involving, among other things, their paternal grandparents' right to visit them) and, at that time, did not know of any of the details such as the court or case number or whether a bankruptcy case was still pending. They argue that their claims should not be deemed to have been discharged in the Chapter 7 Case for these above-mentioned reasons.

9.  Ryan and Quinn Gold have filed first a Motion to Dismiss

the Chapter 13 Case ("Motion to Dismiss") in April 2006. They argue that since, at the time the Debtor filed his Chapter 13 Case (April 7, 2004), the unsecured debt limit under Section 109(e) for Chapter 13 eligibility was $307,675, the Debtor was not eligible to file his Chapter 13 Case because his unsecured debt was in excess of $10,000,000 (the amounts owed to Ryan and Quinn Gold on their Foreign Judgments)—since the claims underlying the Foreign Judgments should be deemed not discharged in the Chapter 7 Case due to lack of sufficient notice to Ryan and Quinn Gold of the Chapter 7 Case.

10. Alternatively, Ryan and Quinn Gold have filed a Motion to Vacate/Reconsider Order of Discharge ("Motion to Vacate") in April 2006. Ryan and Quinn Gold once again argue that Mr. Gold was not eligible to be a Chapter 13 debtor, pursuant to Section 109(e), because his unsecured debt (if the court counts Ryan and Quinn's claims—which they argue the court should), exceeded $307,675. Therefore, they argue that the order of discharge entered in Mr. Gold's Chapter 13 Case should be vacated. Ryan and Quinn Gold further add that the "Debtor's failure to provide Movants with notice of the case constitutes fraud upon Movants and upon the Court." Motion to Vacate, p. 1, ¶ 5.

LEGAL ISSUES

7

There are several legal issues presented by the Motion to Dismiss and Motion to Vacate, among them: (1) whether Ryan and Quinn Gold have standing to pursue their motions at all—*i.e.,* are the 11+ year old Foreign Judgments dormant or still enforceable and, thus, are Ryan and Gold still potential creditors of Mr. Gold (the parties have submitted briefing on this subject); (2) assuming dormancy of the Foreign Judgments is not a standing problem for Ryan and Quinn Gold, whether the written notice given to Ryan and Quinn Gold in the Chapter 7 Case met minimal Constitutional requirements of due process—*i.e.,* that is, was notice only to their former lawyers (or, in Quinn's case, the former lawyer of her next friend/mother) reasonably calculated to give them notice of the case; (3) assuming written notice was not sufficient, did they nevertheless have actual knowledge of the Chapter 7 Case in time to prosecute their claims/rights therein; and (4) if written notice was not sufficient and they had no actual knowledge and the claims of Ryan and Quinn Gold were not discharged in the Chapter 7 Case, are Ryan and Quinn nevertheless barred by laches from obtaining any relief, since they waited 14 months to come into this bankruptcy court for any relief after learning about the bankruptcy cases.  However, there seems to be one primary issue that cannot be ignored: **Have Ryan and Quinn**

8

*Gold properly presented these legal issues to this court at this time by filing a Motion to Dismiss the Chapter 13 Case and an alternative Motion to Vacate the Order of Discharge in the Chapter 13 Case*?

## CONCLUSION

This court concludes, regrettably, that none of the legal issues set forth above are ripe for adjudication. More specifically, Fed. R. Bankr. P. 7001 dictates that these issues cannot be determined in a contested matter. Rule 7001 provides that, among other matters, the following must be brought as an adversary proceeding:

\* \* \* \*

> (4) a proceeding to object to or revoke a discharge;
>
> (5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;
>
> (6) a proceeding to determine the dischargeability of a debt;

\* \* \* \*

> (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing;

Fed. R. Bankr. P. 7001.

In substance, both the Motion to Dismiss and the Motion to Vacate seek a determination by this court (essentially a

declaratory judgment) that Ryan and Quinn Gold's claims were not discharged in the Chapter 7 Case. It is only after a determination that their claims were not discharged in the Chapter 7 Case that this court could possibly reach the questions of whether dismissal of the Chapter 13 case is appropriate or vacatur of the Chapter 13 confirmation order makes sense. The two motions are entirely premised on the notion that Ryan and Quinn's claims were not discharged in the Chapter 7 Case. This question of whether the claims were discharged (*i.e.,* whether written notice was insufficient and whether actual knowledge existed) can only be decided in an adversary proceeding with the added aspects of due process that such a proceeding entails. It is quite clear from Fed. R. Bankr. P. 7001 and case law addressing the type of issues raised by Ryan and Quinn Gold[2] that they needed to file an adversary proceeding seeking a declaratory judgment with regard to whether their claims were discharged in the Chapter 7 Case before their Motion to Dismiss and Motion to Vacate are ripe for consideration.

    The court will enter an Order consistent with this opinion.

---

[2] *E.g., Insurance Co. of N. America v. Faden (In re Faden)*, 170 B.R. 304 (Bankr. S.D. Tex. 1994); *Kern v. Kern*, 171 B.R. 679 (Bankr. D. Ariz. 1994); *Rion v. Spivey (In re Springer)*, 127 B.R. 702, 705 (Bankr. M.D. Fla. 1991); *D'Agostino v. Walker (In re Walker)*, 125 B.R. 177, 179 (Bankr. E.D. Mich. 1990).

The court will also consider a compressed or expedited Scheduling Order in any adversary proceeding subsequently filed regarding these matters (and would consider a motion for judgment based on the record offered in the contested matter), subject to any party's right to object.

### END OF MEMORANDUM OF OPINION ###